**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff/Respondent,<br><br>v.<br><br>Ernesto Felix,<br><br>    Defendant/Movant. | No. CV-18-00148-TUC-JGZ<br>No. CR-11-03280-TUC-JGZ<br><br>**ORDER** |

Pending before the Court is Petitioner Ernesto Felix's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.[1]) The Government responded. (Doc. 13.) Felix did not file a reply. Dispositive of this action is whether Felix is entitled to equitable tolling of the statute of limitations for filing a § 2255 Motion because of alleged memory issues. Upon consideration of the record and the parties' arguments, the Court will deny Felix's § 2255 Motion as untimely filed.

**I.    Background**

In September 2011, a grand jury indicted Felix and co-defendants Luis Corral, Gerardo Cota-Soto, Jesus Bautista-Sanchez, and Carmen Valdivia-Salazar charging one count of Conspiracy to Possess with Intent to Distribute Methamphetamine and Cocaine in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(A)(viii) and 21 U.S.C. §841(b)(1)(A)(ii)(II); two counts of Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §841(a)(1) and 21 U.S.C. §841(b)(1)(A)(viii); and one count of

---

[1] Unless otherwise indicated, documents cited are filed in CV 18-148-TUC-JGZ.

Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. §841(a)(1) and 21 U.S.C. §841(b)(1)(A)(ii)(II). (CR 11-3280-TUC-JGZ (CR 11-3280), Doc. 12.) The charges arose from events occurring on August 24 and 25, 2011. (*Id.*) During the course of this action, Felix was represented by a succession of appointed counsel.

In January 2013, Felix, during first representation, pleaded guilty to Count 3 of the indictment alleging possession with intent to distribute methamphetamine. (CR 11-3280, Docs. 131, 220.) During the colloquy, Felix stated that he did "not remember what happened" regarding the events leading to his arrest, he understood the charges against him, and he agreed that the government could prove the factual basis set forth in the plea agreement. (CR 11-3280, Doc. 220, pp. 6, 13, 15–20.[2]) The plea agreement provided for a range of 63 to 108 months of imprisonment. (*Id.* at 19.)

On May 7, 2013, Felix's counsel notified the Court that Felix was not safety valve eligible and that counsel needed to confer with Felix about continuing with his guilty plea or withdrawing from it.[3] (Doc. 13, p. 4.) On that same date, Felix filed a request for new counsel, claiming that current counsel was ineffective because he did not "adequately explain[] facts regarding papers he aggressively expects me to sign" or answer Felix's questions, and counsel lacked interest demonstrated by his disregard of Felix's "objections and assertions with regard[] to my case." (*Id.*; CR 11-3280, Doc. 180.) The Court granted Felix's request and appointed new counsel. (Doc. 13, p. 4.)

At a June 12, 2013 status conference, Felix's second counsel requested additional time to consider matters pertinent to sentencing and to have Felix examined to determine competency, indicating that Felix "may have a diminished capacity to understand things." (CR 11-3280, Doc. 372, p. 4.) On June 15, 2013, Felix's counsel filed a Motion to Determine Competency stating "that there is a good faith question as to Mr. Felix's present competency, based on a mental disease or defect, to either assist in his own defense at trial

---

[2] Reference to page numbers of cited filings correlate to the page number assigned by the Court's electronic filing system (CM/ECF) that appears at the top of each page of the document.

[3] Because Felix was not safety valve eligible, he faced a mandatory minimum sentence of 10 years'.

or be competent at sentencing. There were issues of comprehension that arose at the change of plea hearing in January, 2013. Also, mental health questions are mentioned in the PSR. Finally, Mr. Felix has always been in special education classes, and he has used and abused many types of drugs to self-medicate." (CR 11-3280, Doc. 215, p. 2.) The Court granted the requested evaluation.

Psychologist James P. Sullivan, Ph.D., evaluated Felix on September 2013 and January 2014 to determine competency. (CR 11-3280, Docs. 255, 256.) Felix's performance on cognitive testing was "consistent with feigning of competency related impairment." (CR 11-3280, Doc. 256, p. 2.) Dr. Sullivan's testing also indicated that Felix was feigning or exaggerating a mental disorder. (*Id.* at 3.) Since the tests showed Felix was "clearly feigning," Dr. Sullivan was unable to complete the evaluation because any further testing would have been invalid and unreliable. (*Id.*) Dr. Sullivan concluded that "it is essentially impossible to determine whether Mr. Felix does indeed suffer from authentic impairment in . . . [cognitive and mental] areas. Obtained results indicate that Mr. Felix is either wholly fabricating impairment (malingering) or exaggerating authentic impairment (symptom embellishment). It is not possible to definitely determine which." (*Id.*)

Dr. Sullivan also noted that Felix's school transcripts from 1988 to 1998 showed "poor to failing performance which appears to have worsened over time." (*Id.* at 4.) Although Dr. Sullivan could not "definitely determine the etiology of this poor school performance[,]" he stated that "authentic cognitive impairment is certainly a possibility." (*Id.*)

At a January 27, 2014 status conference, defense counsel stated that in light of Dr. Sullivan's report, it appeared that Felix was competent to be sentenced. The Court agreed that based on Dr. Sullivan's report, Felix did not appear to have a competency issue that would prevent going forward.

At a March 17, 2014 status conference, Felix's counsel advised that Felix wanted to withdraw from the plea agreement because when the plea was entered, the parties thought

Felix was safety valve eligible and they have since determined he was not. (CR 11-3280, Doc. 366, p. 2.) Defense counsel also acknowledged Dr. Sullivan's opinion that Felix "was exaggerating or fabricating and . . . [the Doctor] couldn't come to good conclusions about the origins of his mental health issues because I guess his testing was clouded by what he thought was malingering." (*Id.* at 3.) Defense counsel also stated that whether Felix was "exaggerating or malingering, I think Mr. Felix has some mental problems, so I have a hard time explaining things to him and a hard time getting him to understand." (*Id.* at 6–8.) The matter was continued to give Felix time to confer with counsel concerning whether he should withdraw from the plea agreement. (*Id.* at 7–8.) On that same date, the Court set a sentencing hearing, which was later continued to April 16, 2014.[4] (Doc. 13, pp. 5–6.)

At sentencing on April 16, 2014, Felix's counsel stated that Felix did not want to go forward with the plea agreement and sentencing because "he didn't understand what was going on and he did not validly plead guilty." (CR 11-3280, Doc. 367, pp. 7–8.) Pertinent to the instant § 2255 Motion, Felix stated that he thought his girlfriend and co-defendant "Carmen drugged me, and if I committed this crime—because I think I didn't commit this crime at all." (*Id.* at p. 8.) The Court discussed with Felix his signed plea agreement and the factual basis he admitted when he had pleaded guilty. (*Id.* at 9–12.) The Court informed Felix that his attorney could request that Felix be allowed to withdraw from the guilty plea, and if he made that request, the Court would be required to assess whether the plea was involuntarily made. (*Id.* at 13.) In a sidebar with counsel, the Court expressed concern whether Felix had a good understanding of the potential sentence he faced. (*Id.* at 14.) Felix's counsel stated that "Dr. Sullivan says he's exaggerating, but Dr Sullivan says he can't tell if there's an underlying mental health issue because he's exaggerating so much. So, you know, he doesn't have a full deck, as far as I'm concerned." (*Id.* at 15.) Felix's counsel also stated that "what he tells me is he was told by . . . [first defense counsel] just to say yes or admit it and he didn't really know what he was doing." (*Id.* at 16.)

---

[4] On April 1, 2014, the Court adopted the Magistrate Judge's Findings and Recommendation concerning Felix's January 10, 2013 guilty plea, and accepted Felix's guilty plea. (CR 11-3280, Doc. 268.)

Following the sidebar, the Court asked Felix about his discussions with his prior counsel concerning the mandatory sentencing range and reminded Felix "that was part of the reason for his discontinuing representation. You were unhappy with him and unhappy with that, and he asked to withdraw." (*Id.* at 19.) Felix responded that he didn't remember. (*Id.* at 20.)

Counsel then addressed sentencing. In doing so, the prosecutor set forth the basis for the government's decision to charge Felix with a crime that provided for a minimum mandatory sentence. (*Id.* at 20–23.) When Felix was asked whether he wanted to say something for the Court to consider before sentencing him, Felix stated that he did not remember what happened concerning the crime, he did not do "this", and "I think these people set me up to whatever happened, honestly." (*Id.* at 24.)

The Court found Felix guilty of possession with intent to distribute approximately 7.1 kilograms of methamphetamine by virtue of his guilty plea to that charge. (*Id.* at 24.) The Court sentenced Felix to ten years' imprisonment followed by five years of supervised release. (*Id.* at 27.) During the sentencing, Felix stated that his first attorney did not tell him "about the stash house" and he told his attorney he "did not know anything . . . about that." (*Id.* at 26.) He stated that it was not "fair that everybody got 63, 60-something months and I'm getting more time if I didn't do anything. . . . Like I said, I don't remember a lot of things." (*Id.* at 28.) Felix also stated that he "didn't commit this crime." (*Id.* at 29.) Felix asserted that he did not agree to his sentence. (*Id.* at 29.)

The Court next explained that under the terms of the plea agreement, Felix had the option to withdraw from the agreement because he received a sentence greater than that contemplated in the agreement. (*Id.* at 30.) The Court also advised: "If you did withdraw, then you have the right to appeal your sentence if you chose to do so." (*Id.*) Felix stated that he wished to appeal. (*Id.*) The Court considered Felix to have withdrawn from the plea agreement and advised Felix of the right to appeal his conviction and sentence. (*Id.*) Felix stated he understood. (*Id.* at 31.)

The following day, April 17, 2014, the Court set an April 21, 2014 hearing for

continuation of sentencing. (CR 11-3280, Doc. 276.) At the April 21, 2014 hearing, the Court again explained to Felix that he could withdraw from the plea agreement and the plea because he received a sentence greater than 108 months of imprisonment. (CR 11-3280, Doc. 368, p. 2–3.) The Court also advised that the charges still carried the same mandatory minimum sentences. (*Id*. at 3.) The matter was continued so Felix could confer with counsel. (*Id*. at 5.)

On April 23, 2014, Felix withdrew his plea of guilty against his counsel's advice. (CR 11-3280, Doc. 369, p. 5.) Counsel also stated that Felix was not receiving his medication for mental health issues at the prison and the Court directed counsel to contact the Marshals Service to obtain more information. (*Id.* at p. 11.) The Court vacated the Judgment and Commitment and set a new plea deadline and trial date. (Doc. 13, p. 6.)

On October 1, 2014, Felix requested new counsel because he did not feel current counsel was working toward his best interests. (*Id.*) The Court granted the request and appointed the third defense counsel, who was soon replaced by fourth appointed counsel because of a conflict. (*Id.* at 6–7.) After some continuances, a plea deadline was set for January 16, 2015, and trial was set for February 2, 2015. (*Id.* at 7.)

In January 2015, the Court granted defense counsel's motion to extend the plea deadline because Felix wanted to accept a plea offered by the government. (*Id.*) At the January 23, 2015 change of plea hearing, Felix pleaded guilty to possession with intent to distribute 3.1 kilograms of methamphetamine as charged in a January 23, 2015 Information. (CR 11-3280, Docs. 229, 331, 370.) Felix stated that he was feeling "nervous" and "scared" but that he did not have difficulty understanding what was being discussed. (CR 11-3280, Doc. 370, p. 8.) Felix stated that he agreed with the factual basis. (*Id.* at 5–6.) He stated that he had a learning disorder and always had problems reading and memorizing. (*Id.* at 9.) When the Court questioned Felix about mental health treatment, he responded that he had treatment for "[s]ome hallucinations." (*Id.* at 6–7.) Felix stated that he understood the plea agreement after his counsel read it to him word for word and no one forced him to enter into the agreement. (*Id.* at 9–10.) Defense counsel

indicated that Felix was competent to plead guilty, stating: "I've been aware that [Felix] has difficulty processing information, but I have no doubt he's legally competent to do this, Judge." (*Id.* at 10.)

The March 2015 presentence report (PSR) indicated that other than substance abuse services, Felix had not been under the care of mental health professionals. (CR 11-3280, Doc. 335, p. 14.) The report stated that during the presentence interview, Felix "appeared to have consistent problems remembering dates, names of family members, and staying focused on questions asked of him." (*Id.* at 14–15.) The PSR noted Dr. Sullivan's findings that Felix was either wholly fabricating or exaggerating authentic impairment. (*Id.* at 15.) The PSR also noted Felix's reported daily marijuana use beginning in 1991 when he was 16 years of age, and drinking up to six beers a day beginning 1993. (*Id.*) In 1996, he started using cocaine daily, and in 2003 he began using methamphetamine, ultimately using it once a week. (*Id.*) Felix reported completing school through the 10th grade. (*Id.*)

On April 2, 2015, the Court sentenced Felix to 80 months' imprisonment followed by three years of supervised release. (Doc. 13, p. 8.) At sentencing Felix stated that he "guess[ed]" he was satisfied with his attorney's representation "[u]nder the circumstances" and mentioned that in some instances his attorney did not show up for court and did not keep him informed of hearing dates. (CR 11-3280, Doc. 371, p. 2, 7–8.) The Court made several findings including that Felix had some issues regarding cognitive functioning and a substantial substance abuse problem given his admission to the arresting officer that he used methamphetamine daily,[5] and he tended to minimize his responsibility which was represented by his not remembering. (*Id.* at 25–26.) The Court also found that Felix knowingly, voluntarily, and intelligently waived his appeal rights. (*Id.* at 30.)

The Judgment was entered on April 7, 2015. (CR 11-3280, Doc. 341). Felix had 14 days from the entry of judgment to file an appeal. Fed. R. App. 4(b)(1)(A). Felix did not file an appeal. (Doc. 13, p. 10.)

---

[5] The Court also stated that whether or not Felix's substance abuse was "the cause of the cognitive difficulties or there are other causes, there's clearly some difficulty functioning." (CR 11-3280, Doc. 371, p. 26.)

On March 20, 2018, Felix filed the instant motion, together with his declaration and supporting exhibits, seeking to vacate his conviction. (Doc. 1.) Felix contends he is entitled to relief because his "court-appointed attorneys were ineffective for a variety of reasons, principally, for failing to inform this court of the truth of Movant's mental condition" and ignoring "his obvious mental condition and documented short-term and long-term memory loss." (*Id*. at 24–25.) Felix contends that his "series of court-appointed attorneys failed to ensure that he was sufficiently competent to properly navigate these legal proceedings." (*Id.* at 22.)

Felix's allegations of counsels' ineffective representation concerning his mental condition is predicated upon Felix's assertion that "at all times during the events leading up to his" arrest and throughout his court case, "he was suffering from a severe mental condition, including short-term and long-term memory loss, which rendered his actions involuntary." (*Id.* at 18 (emphasis omitted); *see also id.* at 43–44.) Felix claims that when he made the "undercover purchase" resulting in his arrest, he had been undergoing medical treatment. (*Id.* at 18.) He believes that prior to his arrest, his girlfriend and co-defendant, Carmen Valdivia-Salazar, and her son-in-law drugged him causing his memory issues, and that they and others set him up. (*Id.* at 36–47.)

Felix states that when he pleaded guilty, he was "scared and confused, and not in my right mind to make decisions like that—which I expressly mentioned to the judge." (*Id.* at 52.) He asserts his appointed counsel "effectively coerced him into signing a plea agreement with the threat of a lengthy prison sentence" despite knowing that his mental state prevented him from fully appreciating "the events as they were unfolding, much less admit guilt to the crime" alleged. (*Id*. at 24.) Felix attaches a 2018 bar complaint he filed against his fourth appointed counsel who represented him during the 2015 change of plea and sentencing proceedings. In the bar complaint, Felix asserts that fourth counsel was ineffective for numerous reasons, including that counsel failed to appear for hearings, did not explain the plea agreement, failed to correct errors in the plea agreement, and did not

obtain Felix's medical records or blood samples as Felix requested.[6] (*Id.* at 65–66.) Felix also stated in the bar complaint that he told fourth counsel that "I couldn't remember what had happened in this case because people were drugging me, which is why I needed drug [sic] samples to see what drug people had been giving me" and that his "girlfriend, Carmen Valdivia, had said that she would have me thrown in jail and then take all of my property." (*Id.* at 66.)

## II. Discussion

Respondent contends, and the Court agrees, that the instant Motion is barred by the statute of limitations. Generally, motions filed pursuant to § 2255 must be brought within one year of the date the conviction becomes final. 28 U.S.C. § 2255(f)(1). Felix's conviction became final on April 21, 2015. Felix did not file his § 2255 motion until almost three years later on March 20, 2018.

Felix concedes that his Motion is untimely. He argues that he is entitled to equitable tolling of the statute of limitations from the time he entered his guilty plea to the filing of the instant Motion due to his short-term and long-term memory loss. (Doc. 1, p. 24.) Felix claims that he has a documented history of memory loss and when he was arrested he had been undergoing medical treatment. (*Id.* at 22, 24.) Felix states, without support, that at his sentencing "it was stated that it would take a period of at least two years for Movant to recover his memory." (*Id.* at 24.) Felix claims that now, after "several years" of treatment in prison, he has "partially recover[ed]" his memory and that he filed the instant motion with the assistance of other inmates.[7] (*Id.* at p. 22; *see also id.* at 43 (Felix still does not remember much about the day of his arrest).) Felix submits medical records showing that on November 14, 2011, which was a few months after his arrest, he was prescribed Wellbutrin. (*Id.* at 57.) On November 23, 2011, he was referred to neurology for evaluation

---

[6] The State Bar of Arizona responded in February 2018 that it would not take action at that time because Felix's allegations involved issues of ineffective assistance of counsel which is a legal issue requiring a court determination. (Doc. 1, p. 67.)

[7] The Court notes that although Felix indicates that he has "partially" recovered his memory and that he did not completely remember the day of his arrest (Doc. 1, pp. 22, 43), he also states that "it took me over a year to recover completely." (*id.* at 47.)

based on his reported history of long and short term memory loss.[8] (*Id.* at 58.)

The Court concludes that Felix fails to make the requisite showing that he is entitled to equitable tolling of the limitations period. A movant is entitled to equitable tolling only upon a showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *United States v. Buckles*, 647 F.3d 883, 889 (9th Cir. 2011) (quoting *Holland v. Florida*, 560 U.S. 631, (2010)); *see also United States v. Battles,* 362 F.3d 1195, 1196–97 (9th Cir. 2004) (there is no reason to distinguish between § 2255 motions and cases filed under § 2254 for purposes of the equitable tolling analysis). When a movant seeks equitable tolling on the basis of mental impairment, he must show that: (1) his mental impairment was "so severe" that he was either "unable rationally or factually to personally understand the need to timely file" or his "mental state rendered him unable personally to prepare a habeas petition and effectuate its filing" and (2) he was diligent in "pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance." *Bills v. Clark,* 628 F.3d 1092, 1100 (9th Cir. 2010) (footnote omitted). "[T]he second prong considers whether the petitioner's impairment was a but-for cause of any delay." *Bills*, 628 F.3d at 1100. "In sum, the petitioner must show diligence in seeking assistance with what he could not do alone." *Stancle v. Clay*, 692 F.3d 948, 959 (9th Cir. 2012) (citing *Bills,* 628 F.3d at 1100). The *Bills* test "reiterates the stringency of the overall equitable tolling test: the mental impairment must be so debilitating that it is the but-for cause of the delay, and even in cases of debilitating impairment the petitioner must still demonstrate diligence." *Yow Ming Yeh v. Martel*, 751 F.3d 1075, 1078 (9th Cir. 2014) (citing *Bills,* 628 F.3d at 1100). Felix bears the burden of demonstrating that equitable tolling applies. *Battles,* 362 F.3d at 1197. Where the movant fails to establish the first prong necessary for equitable tolling, the court need not determine whether he showed

---

[8] On November 23, 2011, Felix also reported a history of heavy alcohol abuse and use of cocaine and marijuana and that he became sober three months earlier. (Doc. 1, p. 58.) He stated he was undergoing psychiatric treatment at COPE Community Services for visual and auditory hallucinations. (*Id.*)

diligence. *See Orthel v. Yates*, 795 F.3d 935, 939 n. 3 (9th Cir. 2015).

Felix fails to satisfy the first prong necessary for equitable tolling because he neither argues nor establishes that his alleged memory issues were so debilitating that he could not rationally or factually understand the need to timely file a § 2255 motion or that he was unable to personally prepare the motion and effectuate its filing. Although the case record reflected that Felix had some difficulty in mental functioning, Felix fails to establish that he suffered from a severe mental impairment that prevented him from timely filing. The medical records Felix submits merely show that he was prescribed Wellbutrin and was referred for evaluation based on his complaints of memory issues. Felix claims that a statement was made at sentencing that it would take him two years to recover his memory, but the transcript does not support this claim. (*See* CR 11-3280, Doc. 371.) Instead, the case record reflects Dr. Sullivan's opinion that Felix was "either wholly fabricating impairment (malingering) or exaggerating authentic impairment (symptom embellishment)" and it was impossible to determine which. (CR 11-3280, Doc. 256, p. 3.) In light of Dr. Sullivan's report, defense counsel conceded, and the Court concluded, that Felix was competent. Thus, the Court concludes Felix has not demonstrated that he suffered from a severe mental impairment that prevented him from timely filing his § 2255 motion.[9]

Felix also fails to state facts demonstrating that his mental illness "made it impossible under the totality of the circumstances to meet the filing deadline despite [his] diligence." *Bills,* at 1093. *See also Holland,* 560 U.S. at 635 ("The diligence required for equitable tolling purposes is 'reasonable diligence,' . . . not 'maximum feasible diligence.'") (citations omitted). The record is clear that during the course of the criminal proceeding, Felix was aware of the grounds supporting his § 2255 Motion. During the criminal proceeding, Felix maintained that he did not remember what happened concerning his conduct leading to arrest. (CR 11-3280, Doc. 220, pp. 6, 14 & Doc. 367, p. 28 & Doc.

---

[9] Aside from allegations of mental impairment discussed above, Felix provides no other basis for this Court to find that an extraordinary circumstance prevented Felix from timely filing his § 2255 Motion.

- 11 -

371, p. 14.) He also told the Court that he thought his girlfriend had drugged him,[10] and that he was set up by others, including his co-defendants.[11] (CR 11-3280, Doc. 367, pp. 8, 24 & Doc. 371, pp. 13–15.) Additionally, throughout the criminal proceeding, Felix was capable of assisting, claims he complained about his various counsels' conduct and successfully sought appointment of new counsel three times. On this record, Felix's Motion is wholly devoid of any facts demonstrating reasonable diligence under the circumstances in timely pursuing a § 2255 motion. Because Felix fails to establish both prongs necessary for equitable tolling, his § 2255 Motion is untimely.

## III. Conclusion

Felix's Motion was filed beyond the statute of limitations as specified in 28 U.S.C. § 2255. Because Felix has not established that he is entitled to equitable tolling of the statute of limitations, his § 2255 Motion must be dismissed as untimely filed.

## IV. Denial of Certificate of Appealability

Before Felix can appeal this Court's judgment, a certificate of appealability (COA) must issue. *See* 28 U.S.C. §2253(c); Fed. R. App. P. 22(b)(1). The district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must indicate which specific issues satisfy this showing. *See* 28 U.S.C. §2253(c)(3). With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For procedural rulings, a COA will issue only if reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right and whether the court's procedural ruling was correct. *Id.* Upon review of the record in light of the standards for granting a certificate of appealability, the Court concludes that a certificate shall not issue, as the resolution of the petition is not debatable

---

[10] Felix even obtained his own blood test when his counsel refused to arrange for one. (Doc. 1, p. 51.)

[11] Like his comments to the Court during the criminal action, Felix's similar statements in his Motion in support of equitable tolling are based upon mere supposition.

among reasonable jurists.

Accordingly,

IT IS ORDERED that:

1. Felix's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 362 in CR 11-3280-UTC-JGZ) and Doc. 1 in CV 18-148-TUC-JGZ is DENIED AND DISMISSED with prejudice.

2. A Certificate of Appealability is DENIED.

3. The Clerk of Court shall enter judgment accordingly in CV 18-148-TUC-JGZ and close the file.

Dated this 4th day of November, 2019.

_____
Honorable Jennifer G. Zipps
United States District Judge